## John Van Bibber v. John H. Mathis.

1. FRAUD—VOLUNTARY CONVEYANCE.—A voluntary conveyance by a parent to his children, made when the parent is in embarrassed circumstances, is not necessarily fraudulent. The indebtedness at the time of the conveyance is a badge of fraud to be considered by the jury in connection with all the facts to determine the intention of the grantor.

2. FRAUD.—A deed of gift to land made by an insolvent debtor to his child, when an unsatisfied judgment against the debtor exists, constituting a lien on the property conveyed, is fraudulent as against the judgment creditor.

APPEAL from San Patricio. Tried below before the Hon. H. Clay Pleasants.

Suit in the District Court of San Patricio county, by John Van Bibber against John M. Mathis *et al.*, in trespass to try title.

Van Bibber obtained a judgment in the District Court of Victoria county on March 16, 1867, against John Pollan and McD. Venable, which was founded on a note executed by Venable to Pollan on the 10th of January, 1860, due in three years from date, and indorsed by Pollan to Van Bibber before maturity. This judgment was for $1,400.82, and by it the vendor's lien was established and foreclosed upon a tract of land situated in Victoria county. The land was sold under order of sale on the first Tuesday in January, 1869, and $679.77 of the proceeds of the sale was applied towards the satisfaction of the judgment in favor of Van Bibber. On the 31st of January, 1877, an execution issued on the judgment to San Patricio county, in favor of Van Bibber, for the balance due upon his judgment; it was levied upon the land in controversy on the 23d day of February, 1877, and the land sold by the sheriff on the first Tuesday in April, 1877, to appellant, for the sum of $1,000.

The land was granted to John Pollan by a valid grant bearing date October 3, 1834.

Pollan conveyed by separate deed, giving metes and bounds,

and expressing a valuable consideration, various parcels of land, part of the land in controversy, to five of his children.

To Minerva Stockley, his daughter, May 11, 1876, he conveyed two hundred and fifty acres of the land before conveyed by him March 7, 1867, to John W. Pollan, who died a minor in June, 1867. All these deeds were duly recorded, amounting in all to thirty-six hundred and eighty acres of the land in controversy.

The deeds offered in evidence were the first and only deeds executed by John Pollan to his children. They were executed at the time they bear date, but a verbal gift of the land so conveyed was made by Pollan to his children in 1856 or 1857.

It appears that J. M. Mathis, one of the defendants, and a member of the firm of Coleman, Mathis & Fulton, which firm is composed of the defendants in this case, knew that the lands given by Pollan to his children were donations at the time they were made. Neither John W. Pollan, Jasper Pollan, Mollie Mathis, Minerva Stockley, J. W. Stockley, Mrs. Richard Harris, nor Richard Harris paid anything for the land conveyed to each by John Pollan.

In the year 1867 John Pollan owed the following debts: To John Van Bibber, $1,420.82; to Wallace & Co., $2,200; to Jessie O. Wheeler, $1,520.82; to Mrs. Meuly, $414; all besides, $500; amounting in all to $6,052.64.

During the year 1867 John Pollan owned, in his own name, and subject to execution, land on the old Pollan league, horse stock worth $2,200, and saddle stock worth $500. Since the year 1867 John Pollan owned no property.

A jury having been waived, judgment was rendered for the appellees.

*Lackey, Stayton & Kleberg*, for appellant.

I. A voluntary conveyance made by a person indebted at the time he executes it, is fraudulent *per se* as to prior creditors. (Rev. Code, art. 2466; Sexton *v.* Wheaton, 8 Wheat., 246; 2 Kent's Comm., 441; 1 Story's Eq. Jur., secs. 355, 357, 359;

2 Minor's Institutes, 607; Reade *v.* Livingston, 3 Johns. Ch., 500; Ridgeway *v.* Underwood, 4 Wash., 129, 137; 1 Amer. L. C., note 36; Johnston *v.* Zane's Trustees, 11 Grat., 561; Miller *v.* Thompson, 3 Porter, 196; Moore *v.* Spence, 6 Judge, (Ala.,) 506; O'Daniel *v.* Crawford, 4 Dev. Law, (N. C.,) 197.)

II. A voluntary deed for three thousand six hundred and eighty acres of land cannot be sustained against a creditor, where the debtor making the conveyance owed at the time $6,055.64, and had subject to execution—of all sorts of property, the same not being cash—not more than $4,000 worth. (Rev. Code, art. 2466; Kehr *v.* Smith, 20 Wall., 31; 13 How., 92, 101; 1 Story's Eq. Jur., secs. 355, 363; 2 Minor's Institutes, 601; Parkman *v.* Welch, 19 Pick., 231; Benton *v.* Jones, 8 Conn., 186; Hudual *v.* Wilder, 4 McC. Law, 294.)

III. A gratuitous conveyance made by a debtor is *prima facie* fraudulent, and will be held void as to existing creditors, unless such presumption be repelled by showing that the existing debts are provided for out of the property donated, and only the surplus bestowed on the donee, or that an ample remnant is left in the lands of the donor to satisfy his debts, without any indefinite probability that it will be so applied. (Rev. Code, art. 2466; Hinde's Lessee *v.* Longworth, 11 Wheat., 199; Kehr *v.* Smith, 20 Wall., 35; 13 How., 92, 100; Lloyd *v.* Fulton, 1 Otto, 485; Weed *v.* Davis, 25 Ga., 686; Lush *v.* Wilkinson, 5 Ves., 387; 3 Grat., 36; 11 Grat., 557.)

*McCambell & Givens,* for appellees.

I. A voluntary conveyance, made by a person indebted at the time he executed it, is not fraudulent *per se* as to prior creditors.

II. A man has the right to settle his property upon his family when this can be done without injuring the rights of existing creditors.

Pollan, in making conveyance in 1867, was but carrying out or consummating the gift which he had made to his children in 1857, and even in 1867 he had more than enough per-

sonal property left to pay all his debts.  (Reynolds *v.* Lansford, 16 Tex., 286.)

III.  Where a party in failing circumstances conveys property to his children, such conveyance is not fraudulent, nor does it require explanation; it is not even a badge of fraud until the fraudulent purpose is first shown.  (King *v.* Russell, 40 Tex., 125; Saufley *v.* Jackson, 16 Tex., 584; Robinson *v.* Martel, 11 Tex., 155.)

BONNER, ASSOCIATE JUSTICE.—The fact that John Pollan was considerably indebted at the date of his several voluntary deeds to his children, made prior to that to Minerva Stockley, dated May 11, 1876, did not necessarily make those deeds void as to appellant Van Bibber, the judgment plaintiff.

Such indebtedness would be a badge of fraud and a circumstance, in connection with others surrounding the transaction, to be submitted to the jury to determine whether or not the intention of John Pollan was fraudulent.  (1 Story's Eq. Jur., secs. 358–365, inclusive, and authorities cited in notes.)

Under the decisions of this court, where the fraudulent intent is not apparent upon the face of the deed, it is a question for the jury.  (Briscoe *v.* Bronaugh, 1 Tex., 327; Bryant *v.* Kelton, 1 Tex., 415; Peiser *v.* Peticolas, 50 Tex., 638.)

The testimony tends to prove that these deeds were executed in compliance with parol gifts of the land made by John Pollan to his children years before, when he seemed to have been in prosperous circumstances; that under these parol gifts some of the children soon thereafter had gone into possession of the parts allotted to them, had made valuable improvements, and had paid the taxes thereon, and which, in a proper case, would have entitled them to a decree for specific performance.  (Willis *v.* Matthews, 46 Tex., 478.)

The testimony further tends to prove that at the date of the deeds made in pursuance of these parol gifts, John Pollan had other property subject to execution from which Van Bibber could have made the remainder due on his judgment.  He,

however, failed to issue his execution and have this property levied upon, but delayed for years, and did not then levy upon the lands in controversy until they had been purchased by the defendants.

Under this testimony, though the defendants may be charged with notice that the deeds were made without a valuable consideration, even yet we are not prepared to say that they were made to delay, hinder, or defraud creditors, or that the court erred in not thus holding.

The testimony, however, shows that subsequently one of the children to whom a deed of gift had been made died, and that John Pollan inherited from him two hundred and fifty acres of the land, and that he afterwards, on May 11, 1876, made a deed of gift of the same to his daughter, Minerva Stockley. This land at that date was subject to execution against John Pollan, and it appears from his own testimony that he was then insolvent.

By a familiar principle of law, under these circumstances this last-named deed was fraudulent as against the judgment creditor, Van Bibber, and so far as it appears by the record, the court erred in not rendering judgment for the plaintiff for this two hundred and fifty acres of land.

On the trial below, a jury was waived and the cause submitted to the judge presiding, and, under the practice of the court, we could reform the judgment if the facts as shown by the record were sufficiently full for this purpose. The defendants pleaded jointly, and a joint judgment was rendered, from which this appeal was taken. Neither from the pleadings nor testimony have we a sufficient description of the several tracts of land embraced in the different deeds, or of this two hundred and fifty acres, by which the judgment can be reformed with the requisite certainty, and it is consequently reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered January 20, 1880.]