SIKES et al. v. FIRST STATE BANK OF DECATUR. (No. 8651.)

(Court of Civil Appeals of Texas. Ft. Worth. May 26, 1917. On Motion for Rehearing, June 30, 1917.)

1. FRAUDULENT CONVEYANCES ☞210 — RECORDING DEED—CONSTRUCTIVE NOTICE.

Rev. St. 1911, art. 6828, provides that any instrument proved according to law may be recorded, and when delivered to the clerk to be recorded shall take effect and be valid as to all subsequent purchasers and creditors, but "nothing in this [article] shall be construed to make valid any instrument which was at the time of its execution from any cause invalid." Article 6842 provides that the record of instruments so authorized to be recorded shall be taken and held as notice to all persons. Plaintiffs in a suit in the nature of a creditors' bill sought to establish a lien against property, legal title to which was in the name of debtor's wife and daughter. Held that, as the conveyances to the wife and daughter had been recorded prior to the giving of credit by plaintiffs, they would not be heard to say that they had no notice of the conveyances.

2. FRAUDULENT CONVEYANCES ☞70—SUBSEQUENT HAZARDOUS SPECULATIONS.

Where a voluntary conveyance is made in contemplation of the grantor's entering upon hazardous speculations and with a view to protect him from subsequent creditors in the event his ventures should result disastrously, it is fraudulent as against subsequent creditors.

3. FRAUDULENT CONVEYANCES ☞210—SUBSEQUENT CREDITOR WITH KNOWLEDGE OF CONVEYANCE.

As a general rule a subsequent creditor who acquired his claim with knowledge or notice of the conveyance sought to be annulled cannot attack it as fraudulent.

4. FRAUDULENT CONVEYANCES ☞298(4) — EVIDENCE—SUFFICIENCY.

In a creditors' suit seeking to subject land of wife purchased with community funds to payment of debts of husband, evidence *held* insufficient to show fraud invalidating the title of wife as to subsequent creditors.

5. FRAUDULENT CONVEYANCES ☞298(4) — EVIDENCE—SUFFICIENCY.

In a creditors' suit seeking to subject improvements placed on minor daughter's land with community funds to payment of debts of her father, evidence *held* insufficient to show that improvements were placed on the land with intent to defraud subsequent creditors.

6. FRAUDULENT CONVEYANCES ☞69(1)—EVIDENCE—SUFFICIENCY.

The fraud that will invalidate title must have existed at the very time the conveyance was made and at the very time the improvements were placed upon the lot.

7. FRAUDULENT CONVEYANCES ☞278(1) — GOOD FAITH—EVIDENCE.

That the father made his home upon the lot of his daughter, who was very young and unmarried, insured the property, and paid the taxes in his own name was entirely consistent with good faith.

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

Suit by the First State Bank of Decatur against C. O. Sikes and others, in which the First National Bank of Decatur and another intervened. Judgment for plaintiff, and interveners and the unnamed defendants appeal. Reversed and rendered.

Ratliff & Spencer, of Decatur, for appellants. McMurray & Gettys and R. E. Carswell, all of Decatur, for appellees.

CONNER, C. J. This suit is one in the nature of a creditors' bill instituted by the First State Bank of Decatur against C. O. Sikes and his wife, Tennie Sikes, and their daughter, Olga Sikes, seeking to establish an attachment lien theretofore adjudged in the county court against C. O. Sikes. Later the First National Bank of Decatur and the firm of Lillard & Co., of the same place, intervened in the suit, each alleging that they were creditors of C. O. Sikes and had likewise secured attachment liens which they sought to have established. All of the asserted liens rested upon two certain houses and lots situated in Decatur, the legal title to one of the houses and lots appearing to be in Tennie Sikes, while the legal title to the other appears to be in Olga Sikes. The creditors alleged, however, that the property covered by the liens was at all times the community property of C. O. Sikes and his wife, Tennie Sikes, and subject to the imposition of the liens described in the creditors' pleadings.

The defendants appeared, and C. O. Sikes by his answer disclaimed any interest in the property in controversy. The defendants Olga Sikes and Tennie Sikes answered, setting up the conveyances under which they claimed their respective lots, one being a deed from S. P. Smith to Tennie Sikes, reciting payment of the consideration out of her separate property, and the other being a deed from C. O. Sikes and wife, Tennie Sikes, to Olga Sikes, purporting to convey the lot claimed by her.

To these special answers the plaintiff in the suit alleged that the conveyances under which Olga Sikes and her mother claimed had been executed with intent to defraud the future creditors of C. O. Sikes, and that the property was being held by said Tennie and Olga Sikes in secret trust for the benefit of the community estate of said C. O. Sikes and wife. It was further alleged by the plaintiff that after the conveyance to Olga Sikes C. O. Sikes and wife had expended and invested the community funds in improvements on the lot claimed by Olga Sikes to the extent of $1,500, and that such improvements had been so invested and placed with the purpose of defrauding the future creditors of C. O. Sikes, and that the same in fact were held by Olga Sikes for the benefit of the community.

The cause was tried before a jury, and resulted in a judgment against C. O. Sikes in favor of the plaintiff and each of the interveners for the amount of their debts as respectively claimed by them and established the liens asserted as against all interest owned in the property claimed by Tennie Sikes and against the improvements to the extent of $1,500 upon the lot claimed by Olga Sikes, and accordingly ordered the sale of the properties mentioned and the proceeds thereof to be applied in the payment of the plaintiff's and intervener's claims in the order of their priority as fixed in the judgment, and Olga Sikes and Tennie Sikes have appealed.

The deed to the lot claimed by Tennie Sikes, and upon which a small dwelling house was situated, was made on the 14th day of June, 1902, and duly recorded in the Deed Records of Wise County on the 11th day of April, 1911. It recited a consideration of $50 "paid out of her separate property." The evidence, however, authorizes the conclusion that the consideration in fact was out of the community property of C. O. Sikes and wife, Tennie Sikes. The deed to Olga Sikes for the lot claimed by her was made on the 21st day of March, 1908, reciting a consideration of $50 cash in hand paid, was in due form, and duly recorded in Wise county on the day of its execution. The improvements in controversy on the lot of Olga Sikes were placed thereon some time during the year 1911, and paid for, as we are authorized to conclude from the evidence, out of the community estate of C. O. and Tennie Sikes. It is undisputed, however, that the indebtedness of C. O. Sikes to the plaintiff and to the interveners all arose after the conveyances to Tennie and Olga Sikes and after the improvements referred to had been erected upon the lot of Olga Sikes, with the possible exception of about $35 due to Lillard & Co. The indebtedness of the several banks did not arise until in October, 1913, and that of Lillard & Co. originated in an account opened in April, 1911. S. A. Lillard testified, however, that:

"I do not know what part of this went in to that house down there (the house built upon Olga Sikes's lot). I think about $35."

We have therefore the question presented of whether under the circumstances the verdict and judgment subjecting the properties claimed by Olga and Tennie Sikes to the payment of the plaintiff's and interveners' claims is authorized. Appellants insist under the first assignment that the court should have given the peremptory instruction requested by them, and we have concluded that the assignment must be sustained. The question of whether a subsequent creditor can successfully attack a conveyance of his debtor on the ground of fraud has been the subject of much discussion in the courts. We have examined many authorities on the subject, but we find it unnecessary to refer to any

but our own. Title 118, Revised Civil Statutes, relating to the subject of registration, after providing for the record of conveyances affecting the title to land, provides (article 6828) that:

When any such instrument "which shall have been acknowledged, proved or certified according to law, may be recorded in the county where the land lies, and when delivered to the clerk of the proper court to be recorded shall take effect and be valid as to all subsequent purchasers for a valuable consideration without notice, and as to all creditors from the time when such instrument shall have been so acknowledged, proved, or certified, and delivered to such clerk to be recorded, and for that time only."

The article referred to, however, among other things, provides:

"That nothing in this [article] shall be construed to make valid any instrument which was at the time of its execution from any cause invalid."

A further article (6842) provides that the record of any such instrument so authorized to be recorded "shall be taken and held as notice to all persons of the existence of such grant, deed or instrument."

[1] Appellees therefore cannot be heard to say, as some of them testify, that they had no notice of the several deeds to Tennie Sikes and Olga Sikes. In law it must be held that they had knowledge of these conveyances at and before the time they extended credit to C. O. Sikes, and it would seem that save for the proviso in article 6828, which we have quoted, that appellees, being without dispute subsequent creditors of C. O. Sikes, would be wholly precluded from questioning those conveyances. For the express wording in the body of the article is that when such instrument has been delivered to the clerk of the proper court to be recorded it "shall take effect and be valid * * * as to all creditors," whether with or without notice, from the time the instrument shall have been recorded.

Appellees, however, seek to invalidate the deeds mentioned upon the ground of fraud. It is insisted that they were executed with the design and for the purpose of hindering persons who might thereafter extend credit to C. O. Sikes. No creditor is named; no specific person is designated; there is only the general allegation. It is true fraud will invalidate such an instrument, but to come within the proviso of article 6828 it must exist "at the time of its execution." And it is only upon this ground that appellees can have any standing in this case. On this subject our Supreme Court in the case of Cole v. Terrell, 71 Tex. 549, 9 S. W. 668, quotes with approval the following from Bump on Fraudulent Conveyances, to wit:

"The simple fact of a subsequent indebtedness is not sufficient to make a transfer fraudulent. There must exist at the time, on the part of the grantor, a fraudulent view, and until this fraudulent purpose is established, either by positive proof or the exhibition of such facts as justify the inference of its actual existence, the conveyance cannot be set aside."

The strictness with which this rule has been enforced may be illustrated by the case of Lewis v. Simon, 72 Tex. 470, 10 S. W. 554. In that case it appears that Simon in 1885 had conveyed to his wife certain land to which a subsequent creditor asserted claims by virtue of a sale under an attachment lien. In disposing of the case, among other things, it was said:

"In order to maintain his defense the appellant introduced the testimony of but one witness. Presenting this testimony in the light most favorable to defendant, it would have authorized the jury to find that Simon was indebted at the time of the conveyance to his wife in an amount in excess of the value of his assets; that after this time he continued his regular business, and also engaged in the purchase of mules or other speculations upon an extensive scale for a man of his means, and that within ten months after the deed to his wife he failed, being indebted to a large amount."

[2, 3] It was further said:

"It has been held that where a voluntary conveyance is made in contemplation of the grantor's entering upon hazardous speculations and with a view to protect it from subsequent creditors in the event his ventures should result disastrously it is fraudulent as against such subsequent creditors. Wait's Fraud. Conv. §§ 100, 101, and cases cited.

"But the author cited also says: 'As a general rule a subsequent creditor who acquired his claim with knowledge or notice of the conveyance sought to be annulled cannot attack it as fraudulent.' Id. § 106; Baker v. Gilman, 52 Barb. (Mass.) 39. This rule has been recognized in former decisions in this court. Lehmberg v. Biberstein, 51 Tex. 457; De Garca v. Galvan, 55 Tex. 53; Van Bibber v. Mathis, 52 Tex. 406. The creditor knowing that the grantor has voluntarily parted with his property, we fail to see the device or deceit by which he can claim to have been defrauded. We conclude there was no evidence to warrant a verdict for the defendant, and that the court did not err in instructing the jury to find for the plaintiff."

[4, 5] In the case before us no evidence whatever is pointed out nor have we found any, to the effect that C. O. Sikes was insolvent or even indebted at the time that he caused the conveyance of the lot claimed by his wife, Tennie Sikes, to her. And this is true substantially of the situation at the time he placed the improvements upon the lot claimed by his daughter, Olga. There is no testimony indicating that at this time he was insolvent or in bad repute in financial circles; on the contrary, the testimony indicates that his credit was at least fair during these periods. The lot to his wife, as well as that of the daughter, was at the time of the several conveyances thereto of small value. The recited consideration in each deed was but $50, and it seems unreasonable to suppose that in 1902, when he caused the execution of the deed to his wife of the lot now claimed by her, that he did so with the purpose of defrauding creditors who became such in 1911 at the earliest and for the most part in 1913. The proof further shows without dispute that there was a small house upon the lot claimed by the wife in which C. O. Sikes and his family lived until the lot of Olga Sikes was improv-

ed; whereupon the improved premises were occupied by C. O. Sikes and his family. If it be admitted that the lot and the improvements constituted community property in 1911, the fact that it was occupied and used and exempt under our laws as a homestead for several years thereafter would seem to refute the idea that there could have been any then intention in the mind of C. O. Sikes to defraud creditors. Nor does the evidence show that C. O. Sikes after these conveyances and after such improvements engaged in any specially hazardous undertakings. So far as the evidence indicates, he continued to pursue his regular occupation as a carpenter and builder. The credit extended to him by the plaintiff and interveners in this case were so done without requiring security. It is undoubtedly true that the conveyance to Tennie Sikes, made as it was at the instance of the husband and for her separate use and benefit, is to be construed as a gift at least, even though acquired with the proceeds of community property, and would have the effect of vesting in her the sole and separate right thereto, free from the debts asserted in this case. So too, do we think it must be held with reference to the improvements put upon the lot of Olga Sikes. The improvements consisted of a dwelling house that undoubtedly became a fixture and part of the lot, and there is no evidence that the improvements were so placed under an agreement or with an understanding that Olga Sikes was to account therefor, or that they might be removed without her consent, or that her lot would stand charged with their value. The evidence is simply silent upon these issues, save that appellees insist upon evidence to the effect that C. O. Sikes rendered his daughter's property in his own name, insured the property in his own name, and paid taxes thereon in his own name. It further appears, however, that Olga Sikes was an only daughter; that she was in fact a minor at the time the improvements were placed upon her lot, having attained her majority about the time they were completed in 1911. So far as the record shows, she remained at home. She testified that her father attended to all of her business; that she had no occasion to and did not inquire into such matters. It also appears that some time in 1915 C. O. Sikes removed to New Mexico owing the debts in controversy in this suit, and since which time Olga and his wife claimed the property in question, as well also as some household effects left by C. O. Sikes in his home at the time of his removal. It further appears that since his removal to New Mexico C. O. Sikes had collected the rents as his own for the several houses in question, and perhaps at times referred to the property as his. But all of these circumstances, in our judgment, are insufficient to authorize a divestiture of the title theretofore fixed in the wife and daughter.

[6] The fraud, if any, that will invalidate these titles must have existed at the very time the conveyances to the wife and daughter were made and at the very time the improvements were placed upon the lot.

[7] And the circumstance that C. O. Sikes, while in Decatur and living upon the lot of his daughter as his home, insured the property and paid the taxes in his own name, is entirely consistent with good faith when we consider that his daughter was very young, unmarried, and living with him. Within themselves we do not think they are sufficient to establish with that degree of certainty required by the law fraud invalidating the title of Olga Sikes, and, unless so, the fraud of Sikes subsequently manifested in 1915 when he removed to New Mexico will not alter the case.

We conclude that the court erred in giving the peremptory instruction, and that the judgment should be reversed, and here rendered for Olga Sikes and Tennie Sikes. See in addition to the cases we have before cited De Garca v. Galvan, 55 Tex. 53; O'Neal v. Clymer, 61 S. W. 546; Kane v. Ammerman, 148 S. W. 815; Lehmberg v. Biberstein, 51 Tex. 457; Bavouset v. York, 18 Tex. Civ. App. 428, 46 S. W. 61.

Reversed and rendered.

### On Motion for Rehearing.

Appellees present a very earnest and forceful motion for rehearing. It is particularly insisted that we were in error in our conclusions as to the title of Mrs. Tennie Sikes, the contention being that the undisputed proof shows that the lots claimed by Mrs. Tennie Sikes were originally owned by J. O. Sikes, the father of C. O. Sikes, husband of Tennie Sikes; that J. O. Sikes left surviving him three sons and one daughter, a Mrs. Gibbons, who inherited the property; that Paul Smith, who conveyed the lots to Tennie Sikes, had only the title acquired by him from one of the heirs; that later the heirs of Mrs. Gibbons conveyed to Tennie Sikes, without recitation therein that it was conveyed as her separate property and without proof that it was paid out of her separate funds, thus leaving a one-fourth interest in one of J. O. Sikes' sons, which, so far as the record shows, has never been conveyed, and also the one-fourth interest inherited by C. O. Sikes, to which, so far as the record shows, no formal transfer has been made. The proof is as stated in the contention just noted. We nevertheless, on original hearing, were, and are still, of the opinion that as against the appellees, the subsequent creditors of C. O. Sikes, Tennie Sikes is entitled to hold the property claimed by her free from the appellees' attachment liens, and in view of the earnestness and ability with which appellees present their contention, it is perhaps due them that we should state the

reasons for our original conclusions in this respect with more particularity.

The deed from Paul Smith was executed on the 14th day of June, 1902. It was a general warranty deed, and for the consideration therein stated purported to convey the entire title, free and absolute, to Tennie Sikes as her separate property and estate. Presumably, as originally stated, this was done with the full assent and at the direction of C. O. Sikes, the husband, which in legal effect and so far as C. O. Sikes was concerned constituted the property the separate property of Tennie Sikes. The deed from the heirs of Mrs. Gibbons was also a general warranty deed, dated on May 20, 1911, and duly acknowledged and filed for record July 8, 1911; the Smith deed having been recorded April 11, 1911. In view of the facts shown by the record that thereafter C. O. Sikes and Tennie Sikes occupied the premises together as their homestead for years before the accrual of the debts upon which appellee sued without any complaint on the part of the husband and without evidence of a claim by him of title in the lots as against the separate interest of his wife, but with a formal disclaimer of title on his part filed in the court below, we think, as between husband and wife, that it should be held that the Gibbons deed was secured in the way of perfecting the wife's title, and that the Smith and Gibbons deeds, together, under the circumstances, and as against the husband and as against his subsequent creditors, vested in Tennie Sikes full and absolute title to all interest in the premises save that shown by the single remaining heir of J. O. Sikes, from whom no conveyance appears. See Peters v. Clements, 46 Tex. 124; Tison v. Gass, 46 Tex. Civ. App. 163, 102 S. W. 754; Speer on Law of Marital Rights, § 358 et seq.

In other respects we deem it to be unnecessary to attempt to add to what was originally said by us, save that we should perhaps say that in reversing and rendering the judgment, as we did, in favor of Tennie and Olga Sikes, it was not our purpose to reverse the judgment in favor of appellees as against the defendant C. O. Sikes. C. O. Sikes answered in the case below, suffered judgment, and prosecuted no appeal.

The judgment, therefore, as against him will not be disturbed, but in other respects the motion for rehearing is overruled.