## LUCINDA RAYMOND v. ABNER H. COOK.

The 48th section of the act to regulate proceedings in the district court reads as follows: "Whenever several suits may be pending in the same court, by the same plaintiff, against the same defendant, for causes of action which may be joined, or where several suits are pending in the same court, for the same plaintiff, against several defendants, which may be joined, the court in which the same are pending may, in its discretion, order such suits to be

consolidated." (Paschal's Dig., Art. 1451.) To justify a consolidation of the suits, they must be between the same parties, the causes of action must be the same, and the subjects must be such as could be joined.

A claim case under the statute (Paschal's Dig., Art. 5310, Note 1155) cannot be consolidated with an injunction suit, though all the parties in the injunction suit (save the wife of one defendant in the execution) are parties to the execution. But if, after the consolidation, the claimant dismiss the claim suit without objection, the erroneous consolidation is no longer in the record, the claim bond is no longer before the court, and the cause must be tried upon its equities.

Prior to the act of 5th February, 1858, relating to principal and surety, the co-surety, in an execution, who pays the debt of the principal, has the right of contribution against his co-surety; but he could not be subrogated to the rights of the plaintiff in the execution as to the lien and levies; but since the passage of that act a surety who pays has these rights. (Paschal's Dig., Arts. 4783–4789, Notes 1070–1072.)

A voluntary deed from a husband to his wife is void as to existing creditors and as to subsequent creditors: certainly as to co-sureties, who pay the existing debt. (Paschal's Dig., Art. 3878, Notes 906–909.)

Where a voluntary conveyance is intentionally made to defraud creditors, it seems perfectly reasonable that it should be held void as to all subsequent as well as prior creditors, on account of ill-faith; as to subsequent creditors, the fraudulent intention must be proved.

Where the cause was tried before the court the decree may be reformed.

APPEAL from Travis. The case was tried before Hon. ROBERT J. TOWNES, a special judge agreed upon by the parties.

The record is exceedingly voluminous, but the following facts are all that are necessary to the point decided:

On the 10th January, 1857, the sheriff of Travis county, by virtue of two executions in his hands in favor of T. W. House against S. G. Haynie, A. H. Cook, and N. C. Raymond, issued respectively December 22 and 26, 1856, levied on certain real estate as the property of N. C. Raymond, and also upon two negroes, Phil and Sylvia.

These executions were based on two judgments in favor of the plaintiff in execution against the defendants, rendered respectively, No. 566, 7th May, 1855, for $4,720, and No. 759, 15th January, 1856, for $4,952 67.

The appellant, Lucinda Raymond, on the 12th of Janu-

ary, 1857, gave her claim bond under the statute to try the
right of property in the slaves, with R. M. Johnson, Josiah
Fisk, and John Horan as her sureties, which was approved
by the sheriff, the slaves valued by him at $1,250, and was
filed with the accompanying affidavit, and docketed upon
the docket of the district court of Travis county.

On the 31st January, 1857, N. C. Raymond and his wife
Lucinda, the appellant, filed their petition in the district
court of Travis county against T. W. House and Abner H.
Cook, the object of which was to enjoin House from pro-
ceeding to collect the executions above named out of the
property of the defendant, Raymond, until he should render
an account of the amount he had received upon the execu-
tions, (there being at the time no indorsement of payments
whatever upon them,) and to compel him to proceed with his
levies upon the property of the defendant, Cook, made by vir-
tue of previous executions, which it was alleged and after-
wards shown were sufficient to make his debt. The peti-
tion also alleged that Cook, the co-defendant of Raymond
in the executions, had received from S. G. Haynie, the prin-
cipal debtor, a sufficient amount of assets to pay the whole
indebtedness, and for other reasons alleged, as between
Raymond and Cook, the latter was bound for the whole;
that House, in making the levy, was lending himself to
Cook to aid him in wrongfully oppressing the complainant,
Raymond, by compelling him, Raymond, to pay a portion
of the indebtedness, the whole of which was really due
from Cook, when at the same time he, House, had a suf-
ficient levy on Cook's property to make his whole debt.
The petition charged, therefore, that the levy was wrong-
ful, illegal, and malicious; that Cook and House were con-
federates in the wrong; and prayed for damages against
them for the levy and the oppressive manner in which it
was made. The complainant, Lucinda Raymond, was
joined with her husband, because certain of the property
levied on was the property she claimed in her own right,

for a portion of which she had already filed a claim bond under the statute.

On the 11th December, 1857, Cook filed his answer to the bill of Raymond and wife, admitting that he had received some of the means of Haynie, the principal debtor, amounting to $4,326 95, and admitting he had some other assets to a small amount in his hands, from which he had realized nothing. He denied that he ever had in his hands sufficient for the purpose of paying the whole debt. He admitted he was cognizant of and anxious for the levy to be made. He alleged that he had paid out of his own funds $4,292 09 on the executions; he charged that the deed of gift from N. C. Raymond to Lucinda, the appellee, was for the purpose of avoiding responsibility on these executions. He prayed, therefore, for a dissolution of the injunction, and for process to be awarded "commanding the sheriff of Travis county to sell said property levied upon as aforesaid, and that the proceeds of such sale be applied to the payment of the balance of said executions, and at the final hearing of said cause it be adjudged and decreed by the court that the said deed from William Davenport to the said Lucinda Raymond, her heirs, &c., and the said deed from the said N. C. Raymond to the said Lucinda Raymond, her heirs, &c., are null and void, and that the property included in said deeds be deemed to be liable to the payment of said executions in favor of said House."

At the fall term, 1857, the defendants, A. H. Cook and T. W. House, in the injunction suit of Raymond and wife, jointly made a motion to consolidate the right of property suit of Lucinda Raymond v. T. W. House with the suit of Raymond and wife against Cook and House. At the same term, December 23, 1857, the motion coming on to be heard, the court consolidated the two causes, to which they both, Raymond and wife, filed their bill of exceptions.

On December 23, 1857, the complainants, Raymond and

wife, filed an amended bill, setting out more fully the special damage which had accrued by reason of the wrongful levies, and stating more clearly the grounds why an account should be taken.

At the same term an application was made to dissolve the injunction that had been granted, which was refused by the court. The claim suit was afterwards dismissed.

On March 22, 1860, the defendant, A. H. Cook, filed an amended answer, alleging that from March 15, 1856, to February, 1860, he had made various payments on the original judgments against Haynie, himself, and Raymond, in favor of House, to the amount of $12,340 70, being the whole of said claims; that previously to January 1, 1857, he had paid on the judgments out of his own funds the sum of $4,915 30, and that subsequently to that time he paid the balance. He went on to except to particular items in the auditor's report, stated his view of the account as between N. C. Raymond and himself, alleged the insolvency of Haynie, and prayed for a judgment against N. C. Raymond for the one-half he had paid out of his own funds, which he alleged to have been $7,736 96, which, together with some other items of cost and personal services and expenses, amounted to the sum of $4,016 30, for which he claimed judgment. And further, "that he may have a judgment against said Raymond, that he may be in all things subrogated to the place and stead of said House in his judgments against said Raymond, and that the property of which the said Raymond was seized and possessed be adjudged, subject to payment of the amount due as stated in like manner as the same was or might have been made subject to the payment, discharge, and satisfaction of said judgments in favor of said House against said Haynie, said Raymond, and this defendant."

On March 24, 1860, the appellant, Mrs. Lucinda Raymond, filed a plea of the statute of limitation, in which she alleged that she had open, notorious, adverse possession of

the slaves, Phil and Sylvia, under a deed duly recorded in Travis county, for more than two years before the levy of the executions in favor of said House against Haynie, Cook, and N. C. Raymond upon them, and she denied that they were subject of levy as the property of N. C. Raymond.

At the June term of Travis district court, 1860, the cause came up before Hon. R. J. TOWNES, presiding as special judge, without the intervention of a jury, upon the report of the auditor, and the exceptions thereto and the pleadings, when the court decreed, that Cook recover of Raymond the sum of $4,030, and all the costs, except the one-half of the fees allowed to the auditor. He decreed that the deed of gift from N. C. Raymond to the appellant, Lucinda Raymond, of November 16, 1854, was a fraud upon Thomas W. House, his creditor; that Cook be subrogated to all the rights and levies which House possessed by virtue of his judgments and executions against Raymond, and especially that he be subrogated to the rights of House under the claim bond filed by the appellant, Lucinda Raymond, for the trial of the right of property of the slaves Phil and Sylvia; and, after the sale of certain other property decreed to be sold, and it shall be ascertained that the same is not sufficient to pay the judgment, that the sheriff shall demand the negroes of Raymond and wife, to be sold in satisfaction of the judgment, and if they are not delivered in ten days after the demand, that then execution issue upon the claim bond in favor of Cook against the sureties of Lucinda, viz, R. M. Johnson, Josiah Fisk, and John Horan, for the sum of $1,250, their assessed value by the sheriff.

The court then went on to decree against N. C. Raymond and Lucinda Raymond and their sureties, in the injunction bond which they filed to obtain the injunction against T. W. House, to wit, Josiah Fisk, James H. Raymond, John Horan, and P. B. Calhoun, the costs of the suit.

The proof was that the deed from Raymond to his wife was voluntary.

Various errors as to matters of practice were assigned; but the real issue was as to the effect of the voluntary conveyance.

*John A. Green,* for appellant.—I. And first as to the error consolidating the causes. (Hart. Dig., Art. 707.)

II. The questions are whether Cook, the co-surety of Raymond, was entitled, on the payment of the debt to the creditor, in his suit for contribution from Raymond, to a judgment upon the right of property bond in the dismissed case of Lucinda Raymond v. T. W. House.

1. There must be something substantial upon which to operate; there must be some fixed, determined right in the creditor against the debtor, such as a mortgage, a judgment, or other ascertained right; and in order to give vitality and force to this right of substitution, the creditor's right must have been ascertained at some time before the suit was dismissed, for the dismissal of the case as to House left nothing to be assigned, so far as the trial of the right of property and the claim bond were concerned. Cook, the co-surety, could not revive the litigation on the bond and claim, for, the right of House not having been determined, nothing was left for him to assign.

2. There was no privity between Mrs. Raymond, the claimant, and any of the parties to the original indebtedness; and it has ever been held that there is no right of substitution unless the parties are connected with the debt. It is said, in Lumpkin v. Mills, 4 Ga., 248, that the right of subrogation by the surety depends upon an equity which springs out of the fact of payment and out of his relation to the principal debtor; and the strongest case of subrogation in the English courts (Parsons v. Briddick, 2 Vernon, 608, cited in Story's Eq., § 499) was a case where the relation of the parties was with the principal debtor.

In fact the current is altogether that way, so that in order that on the principle of subrogation a party to be held liable must have been connected with the matter through the principal debtor. It must be something which has been procured from or been given by the principal debtor, and if not by him, it must have been at least procured or given by the co-surety, whose property was sought to be made liable. The case of Lidderdale v. Robinson, 2 Brock., 165, and the same case, 12 Wheaton, 594, goes no further than this.

*N. G. Shelley,* for appellee.

[The brief was mostly devoted to matters of practice not decided.]

LINDSAY, J.—Although there were many points raised by the pleadings, and on the trial of the cause in the court below, there is but one properly before this court for its revision, and that is, did the court err in deciding that the property of the husband conveyed to his wife, after his liability had accrued as a surety, was subject to the payment of that liability.

The facts presented in the record show that T. W. House had recovered two judgments against S. G. Haynie, A. H. Cook, the appellee, and N. C. Raymond, the husband of the appellant; that executions were issued upon these judgments, and were levied upon certain property supposed to be the property of the defendant, N. C. Raymond; that the appellant, the wife of said Raymond, claimed the property as her separate property, made her affidavit, and executed and delivered a bond, in conformity with the provisions of the statute, to the sheriff, who made the levy. The sheriff, in compliance with the requirements of the statute, made the proper indorsements upon the bond and returned it, with the affidavit, to the clerk of the court, from which the execution issued, by whom it was duly

docketed, and thus became a suit in court.   Subsequently, but before the trial of an issue as to the right of property, the appellant and her husband filed their petition in court, alleging a fraudulent combination between the creditor, T. W. House, and A. H. Cook, a co-defendant in the judgments and a co-surety, (as is alleged in the obligations upon which the judgments were obtained,) for the purpose and with the design and intent of making Raymond, who was but a surety, pay the whole indebtedness to the creditor, and charging that the co-surety, A. H. Cook, had received from S. G. Haynie, the principal debtor, but who was insolvent, a sufficiency of means or assets to discharge the whole liability, reaffirming the claim to the right of property in the wife, and praying an injunction and other relief against the creditor, T. W. House, and the co-defendant and co-surety, A. H. Cook.

Cook answered, denying the allegations of the petition, and alleging that since the commencement of the litigation he had paid largely more than his *pro rata* of the indebtedness as a co-surety, and seeking substitution to all the liens of the creditor for the enforcement of his claim, for the purpose of compelling contribution of his co-surety, Raymond, who had become insolvent by the alienation of all his property.

At a subsequent term of the court, upon the motion of the creditor, House, and the co-defendant and co-surety, Cook, the two causes, the claim of property case and the injunction case, were consolidated, and the ruling of the writ thereupon excepted to by Raymond and wife.   At a still later term, but before the trial term, Raymond and wife, without opposition from the creditor, House, or the co-surety, Cook, dismissed the claim suit, which had been instituted by affidavit and bond, leaving nothing for trial and adjudication by the court but the issues formed by the pleadings and the facts proved in the injunction suit.   Such

seems to have been the state of the record, in its legal aspects, at the time of the trial.

It is altogether unnecessary, from the view we take of this case, to go into a critical analysis of the various legal questions incidentally raised upon the trial of the cause, suggested by the record, and so ably and ingeniously argued by counsel, both orally and by brief. Some of the questions are exceedingly interesting, and involve principles more than ordinarily abstruse. We do not think, however, this case imperatively requires an attempt at their elucidation. If we regarded the necessity as existing, however conscious we might be of its intrinsic difficulties, we would not shrink from essaying the task of expounding them. But we do not consider it necessary to discuss them, in the attitude of the case presented for our consideration by the record.

The consolidation of the two suits in the district court was clearly an error. They were not in the condition contemplated by the statute to warrant the consolidation. They were not in the name of the same plaintiffs against the same defendants, nor was the nature of the causes of action the same in each, nor were they causes of action which might be joined, as the statute demands. The consolidation was therefore clearly erroneous, and the motion ought not to have been granted. But this error was cured before the trial. The plaintiff, by her counsel or attorney, dismissed her claim suit by the tacit consent of both the creditor and the co-surety, and that case was no longer *sub judice.* So far as the creditor was concerned, perhaps he could have made no valid objection to the dismissal, as the effect, as to him, would ordinarily be to ·remit him to the enforcement of his execution lien against the specific property which had been impounded by the institution of the proceedings. But as to the co-surety, if it was his purpose, and he had a right to (which we do not now propose to

decide) substitution to the rights and liens of the creditor upon the payment of the debt, he certainly would have lost that right by his silent acquiescence in, and his tacit consent to, the dismissal of the case by the plaintiff at the time the dismissal took place.

We do not, however, regard this as a case in which the doctrine of subrogation can with propriety be invoked. By the provisions of our statute of the 5th of February, 1858, passed subsequently to the institution of this suit, it would now certainly be a legitimate remedy. That statute, by the generality of its provisions, (Paschal's Dig., Art. 4783, *et seq.*,) has provided, in effect, not only for the substitution of the surety to all the judgment liens of the creditor against the principal debtor, but by clear and explicit terms for the substitution of one surety, who shall have paid the debt, to his judgment lien against a co-surety; thus relieving the question in future from much of its complication when to be determined alone by the rules of equity.

From the facts of this case, although there is a special prayer in the cross-petition of A. H. Cook for substitution, yet, under the general prayer for relief, it falls more properly under the head of the equitable doctrine of contribution among sureties rather than that of substitution of the surety to the rights of the creditor against the debtor. This is the aspect in which the facts present the case in the light of the principles of equity.

The court below was warranted by the evidence in coming to the conclusion that the deed from N. C. Raymond to the appellant was fraudulent and void as to the creditor, House, who justly treated it as a nullity, and was seeking to enforce his judgments by levying his executions upon the property. Such was the state of things when the appellant and her husband, by their petition, arrested his action by injunction; and, placing the whole matter under the control of a court of equity, they ought to abide the settle-

ment upon the principles of equity. While thus under the control of the court, by the action of the appellant and her husband, the co-surety, Cook, paid off and discharged the entire indebtedness to the creditor, by which his equity to contribution from his co-surety, Raymond, was created. The conveyance of Raymond to his wife was voluntary, which falls expressly under the denunciations of the statute as to creditors and subsequent purchasers without notice; and particularly is it fraudulent as to existing creditors when the conveyance is made by one in failing circumstances. In this contest, then, between the claimant under the deed and an existing creditor, at the time of its execution and delivery, and a co-surety with the maker of the deed, the court was bound to pronounce it fraudulent and void.

It is upon a broader principle of equity than that of substitution that the property in this case is held subject to the claim of the co-surety, and is brought within the rule of contribution between sureties. In law, sureties are equally bound for the debt due the creditor. Natural justice demands, when the principal debtor fails, that each should contribute equally to the satisfaction of the demand. Any attempt at an evasion of this liability by either of the sureties is a fraud upon the others, which no court of administrative justice ought to tolerate. The facts in this case warranted the court in exercising its corrective powers in the dispensation of equal justice. The claim of the appellant is not within the protection of the statute. She is a volunteer grantee. The conveyance of the co-surety was a voluntary conveyance; and, from the circumstances under which it was made, it was neither valid against the existing creditor, T. W. House, nor against the subsequent creditor, A. H. Cook. As against the existing creditor, it was fraudulent; because the law raised the presumption of fraud, under the statute in favor of the creditor, and superseded the necessity of any proof of actual fraud. The

conveyance itself operated as constructive fraud against a prior creditor. To counteract this presumption of fraud, the burden of proof is thrown upon the grantor. Cases might exist in which even this presumption of law might be rebutted. But the rule is universal that, as to existing creditors, a voluntary conveyance is fraudulent and void. This is an inference and presumption of law. It may also be fraudulent and void as to subsequent creditors. Justice STORY, in his Commentaries upon Equity Jurisprudence, vol. 1, page 400, says that where the "voluntary conveyance is intentionally made to defraud creditors, it seems perfectly reasonable that it should be held void as to all subsequent as well as to all prior creditors, on account of ill faith."

This doctrine we regard as founded upon a just conception of the obligations of social duty, and is well calculated to restrain the too-common propensity to act in bad faith in the business relations of life. Chancellor KENT, in an opinion reported in 3 Johnson's Chancery, lays down the doctrine, "that fraud in a voluntary settlement was an inference of law, and ought to be so, so far as it concerned existing debts; but that, as to subsequent debts, there is no such necessary legal presumption; and there must be proof of fraud in fact; and the indebtment at the time, though not amounting to insolvency, must be such as to warrant that conclusion."

While this is the general doctrine, the principle is everywhere distinctly recognized that where the voluntary conveyance is made in contemplation of future debts, and the facts and circumstances of the case evince that intention, it is equitable and just to declare such conveyance fraudulent and void as to subsequent creditors; and to "let in" such subsequent creditors to a participation of the property for the satisfaction of their demands. In this case the co-surety, Cook, during the pendency of the controversy, paid off the entire debt for which he was legally bound, and thus became the creditor of the other surety, who was

XXXI—25

equally bound with him, and, upon the principles of equity, was also bound to make contribution whenever that payment should be made by a co-surety. Of his indebtedness to the original creditor, as well as of his future liability to his co-surety, who would be compelled to make the payment because of the insolvency of the principal debtor, he was fully aware. In this condition of things, and looking to all these contingencies, the co-surety, N. C. Raymond, makes a voluntary conveyance of his property, which reduces him to absolute insolvency. Can it be doubted that the deed was made in contemplation of future as well as of existing debts? The supreme court of the United States has held, in the case of Sexton v. Wheaton, 8 Wheat., 229, that subsequent creditors may successfully attack a voluntary conveyance, by proving that it was fraudulent, or by showing that it was made with a view to shield the property against future debts. Voluntary conveyances stand upon a very different footing from conveyances made for a valuable consideration. This case was brought to the consideration of the court by the appellant before the debt of the original creditor was paid off and discharged, and while under review by the district court the debt was extinguished as to that creditor by one of the sureties, and the liability for contribution by the other surety accrued; and in equity, when it was decreed by the court that the conveyance to the appellant was fraudulent as to the creditor, the surety who paid the debt ought to have been "let in" to subject the property to the payment of the *pro rata* contribution of the defaulting surety. These being, as we conceive, just and well-grounded principles of equity, when the parties to the deed, by their own acts, threw their cause into a court of equity, to be tested in the crucible of morality and natural justice, it must abide the results of the most rigorous scrutiny.

The only objection to the decree of the court below is to be found in that clause of it in which A. H. Cook is

attempted to be "subrogated to all the rights, securities, and liens of T. W. House, had under and by virtue of his judgments, &c., against N. C. Raymond;" and especially "to the rights of said House under and by virtue of the claim bond," &c.   The claim bond was no longer a matter under adjudication at the pronouncing of the decree. It had been discharged before trial, with the assent of all parties.   Technically, it was *de hors* the record. In giving a contingent judgment, therefore, against the sureties on the claim bond, the court committed error.   In all other respects the decree of the court dispensed substantial justice between the parties.   Wherefore the judgment is in all things else affirmed, with the modification that the judgment is annulled and held for naught against R. M. Johnson, Josiah Fisk, and John Horan, the sureties in the claim bond, in relation to whom it is dismissed.

DECREED ACCORDINGLY.

[MORRILL, C. J., and HAMILTON, J., having been of counsel, did not sit in this case.]