## QUARLES et al. v. HARDIN et al.

## SAME v. CONWAY et al.

### (Nos. 725, 726.)

(Court of Civil Appeals of Texas. El Paso. Oct. 18, 1917. Rehearing Denied Nov. 8, 1917.)

1. FRAUDULENT CONVEYANCES ⬦⟲271(3) — DEBTS SUBSEQUENTLY CONTRACTED—PRESUMPTION.

No legal presumption of fraud arises from the mere fact that debts were contracted subsequent to a husband's execution of a conveyance of his property to his wife.

2. FRAUDULENT CONVEYANCES ⬦⟲295(1) — EVIDENCE—SUFFICIENCY.

Evidence *held* sufficient to support a finding of fraud in the husband's conveyance of the homestead to his wife.

3. FRAUDULENT CONVEYANCES ⬦⟲295(2) — EVIDENCE OF FRAUD—SUFFICIENCY.

Fraud in a conveyance may be proved by circumstances as well as by positive evidence.

4. FRAUDULENT CONVEYANCES ⬦⟲69(2) — VALIDITY—SUBSEQUENT CREDITORS.

A deed executed with fraudulent intent by the husband to his wife is void as to subsequent creditors.

5. FRAUDULENT CONVEYANCES ⬦⟲210—RIGHT OF SUBSEQUENT CREDITORS — RECORDING CONVEYANCE—EFFECT.

Where the husband in making a conveyance of land to his wife intended to defraud his creditors, and immediately had the deed recorded in the county where the land lay at the county seat, at a considerable distance from the places of business of his creditors with which communication was difficult, the record of the instrument did not, under Rev. St. 1911, arts. 6828, 6842, as to the effect of recording conveyances, constitute such constructive notice to subsequent creditors as that they could not attack the deed.

6. FRAUDULENT CONVEYANCES ⬦⟲162(1) — RIGHT TO ATTACK—GRANTEE'S INTENT.

The intent of the grantee is immaterial in a voluntary conveyance fraudulent as to the grantor's creditors.

7. FRAUDULENT CONVEYANCES ⬦⟲242(1) — RIGHT TO ATTACK—DEFENSE—CONVEYANCE TO WIFE.

Where the husband conveyed property to his wife in fraud of creditors, the deed reciting that the consideration on her part was payment of a certain sum monthly and provision of a place for the husband to live, the wife could not prevent an attack upon the deed as fraudulent on the ground that she was an innocent purchaser where she did not perform her part of the agreement, and therefore was not a purchaser for value.

8. FRAUDULENT CONVEYANCES ⬦⟲301(4) — RIGHT TO ATTACK — EVIDENCE — WIFE'S KNOWLEDGE AND INTENT.

Evidence *held* to show either that the wife participated in the fraud or had constructive notice thereof, so that she could not as an innocent purchaser enjoin an action of the husband's creditors to set aside the conveyance of land to her as fraudulent.

9. APPEAL AND ERROR ⬦⟲213—PRESERVATION OF GROUNDS OF REVIEW — SUBMISSION OF SPECIAL ISSUES.

In the absence of request to submit special issues, it will be presumed that such issues were resolved against the party so as to support the judgment in view of the specific provisions of Rev. St. 1911, art. 1985.

10. INJUNCTION ⬦⟲200 — DETERMINATION AGAINST PLAINTIFF—ASSESSMENT OF PENALTY.

The wife's action to enjoin a sale of property which had been conveyed to her by the husband in fraud of creditors, in the absence of showing that it was brought for delay, did not merit, on determination against her, the assessment of the penalty of 10 per cent.

Appeal from District Court, Erath County; W. J. Oxford, Judge.

Two suits by L. A. Quarles and another against H. H. Hardin and others, and against J. W. Conway and others. From the decrees rendered, plaintiffs appeal. Reformed and affirmed.

Robt. L. Thompson and J. A. Johnson, both of Stephenville, for appellants. W. P. Gibbs, of Gordon, and Chandler & Pannill, of Stephenville, for appellees.

HIGGINS, J. By deed dated January 25, 1915, John Quarles conveyed to his wife, L.

⬦⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

A. Quarles, for the term of her life various tracts of land situated in Erath county; also two lots in the town of Gordon, Palo Pinto county; also certain live stock, farming implements, and a vendor's lien note. The property belonged to the community estate of Quarles and his wife, and was all or practically all of the property owned by John Quarles available for the payment of his debts. The deed was filed for record upon the day of its date in the office of the county clerk of Erath county in the town of Stephenville, and was duly recorded. The instrument was not recorded in Palo Pinto county, so far as the record discloses. The deed recites that it was executed in consideration of love and affection for L. A. Quarles, and on condition that she should give him a home during his lifetime and pay him the sum of $33.33 monthly during his life. The instrument also constituted a will, and by its terms provided that after the death of the wife his property should descend to his five children in equal parts. Subsequent to the date and record of this instrument, John Quarles, in the year 1915, contracted debts to various parties in the town of Gordon, among whom were H. H. Hardin and J. W. Conway. Default being made in the payment of these debts, suits were filed thereon by Hardin and Conway and attachments issued which were levied upon the lands conveyed by John Quarles. In these suits judgments were rendered in favor of Hardin and Conway against John Quarles for their respective debts with foreclosure of the attachment liens. Orders of sale were issued upon these judgments and placed in the hands of the sheriff for execution. Thereupon these two suits were filed by L. A. Quarles, joined by her husband, John Quarles, to enjoin the sale. From adverse judgments, Mrs. Quarles and husband prosecute these appeals. The causes were tried before juries and submitted upon special issues. In Quarles v. Hardin, these findings were made by the jury:

"No. 1. Was the instrument in writing in evidence before you, dated January 25, 1915, and signed by John Quarles, made by him with the intent to protect the property of said Quarles from future debts and with intent to defraud future creditors? Answer: Yes.

"No. 2. Eliminating the property set out in the instrument dated January 25, 1915, was John Quarles solvent or insolvent at the time he contracted the debts due defendant for lumber and material? Answer: Yes, insolvent.

"No. 3. Did John Quarles at the time he bought entertain the intent to pay for the materials purchased from the defendant, or did he intend to defraud defendants out of their debt? Answer: Yes, he intended to defraud defendants out of their debt.

"No. 4. If John Quarles was insolvent at the time he contracted the defendant's debt, and if he did not intend to pay for the material obtained from the defendant at the time he purchased the same, then did Mrs. Quarles know of his insolvency and of his intention not to pay for said material? Answer: Yes.

"No. 5. Has the material furnished by defendant to plaintiff John Quarles that went into the improvements on the land enhanced the value of the same? If so, how much? Answer: Yes, $850."

In Quarles v. Conway, these findings were made:

"No. 1. Was the instrument in writing in evidence before you, dated January 25, 1915, and signed by John Quarles made by him with the intent to protect the property of the said John Quarles from future debts and with the intent to defraud future creditors? Answer: Yes.

"No. 2. Has the material that was furnished by defendant Conway to the plaintiff John Quarles, that went into the improvements on the lands now claimed by L. A. Quarles, if any did go into said improvements on the lands, enhanced the value of the same? If so, how much? Answer: Yes, to the amount of the cost of material furnished and the money advanced for the improvement of the place, to wit, $264.-10."

It is insisted by appellants that there is no evidence, or at least no sufficient evidence, to support the finding that the conveyance of January 25, 1915, was made by John Quarles with intent to protect his property from future debts, and with intent to defraud his creditors.

[1-4] It is quite true that no legal presumption of fraud would arise from the mere fact that debts were contracted subsequent to the execution of the conveyance (Searcy v. Gwaltney Bros., 36 Tex. Civ. App. 158, 81 S. W. 576; Bump on Fraudulent Conveyances [2d Ed.] p. 308), but upon consideration of all the facts adduced it is ample to support the finding indicated. There is no direct evidence of such fraudulent intent, but when all of the facts and circumstances surrounding and connected with the transaction are considered, they tend very strongly to show that the conveyance was conceived in fraud by John Quarles and executed for the purpose of defrauding his subsequent creditors. Fraud is almost always difficult to prove by positive evidence and may be proved as well by circumstances. Day v. Stone, 59 Tex. 612; Schmick v. Noel, 72 Tex. 1, 8 S. W. 83; Giddings v. Steele, 28 Tex. 732, 91 Am. Dec. 315; Linn v. Wright, 18 Tex. 317, 70 Am. Dec. 282; Layton v. Hall, 25 Tex. 204. The evidence in the cases is quite lengthy, and we deem it unnecessary to detail same and point out the facts and circumstances which in our opinion tend to establish the fraud. It is sufficient to say that we sustain the finding of the jury upon this issue. It is well established that a deed executed with the fraudulent intent and purpose which the jury has found prompted the execution by John Quarles of his deed to his wife is void as to subsequent creditors. Bergson v. Dunham, 40 S. W. 17; Cole v. Terrell, 71 Tex. 549, 9 S. W. 668; Dosche v. Nette, 81 Tex. 265, 16 S. W. 1013; Raymond v. Cook, 31 Tex. 385; Rives v. Stephens, 28 S. W. 707. Neither Hardin or Conway had any actual knowledge of the existence of the conveyance by Quarles to his wife until after their debts had been

created, and the question arises as to the effect upon their rights by reason of the fact that such conveyance was immediately filed for record in the office of the county clerk at Stephenville in Erath county where the land is situate, and that their debts were created after such registration.

.[5] The evidence shows that Quarles was a farmer and resided upon the land. His home was 6 or 8 miles from the little town of Gordon in Palo Pinto county, where for many years he had traded and marketed his products and established a good reputation for honesty and uprightness. He had always paid his debts, and his credit was good. The merchants and traders there were glad to extend him credit. Hardin was a lumber dealer in Gordon and his debt was for lumber and other materials furnished to John Quarles and used by him in the construction of a residence upon the land which he had theretofore conveyed to Mrs. Quarles and in which he and Mrs. Quarles and their children resided. Conway was a merchant doing business in Gordon, and his debt was for supplies furnished to John Quarles during 1915 to support his family and operate the farm, except the sum of $125, which was paid, for Quarles, to the carpenter who erected the above-mentioned residence. Some of the debt was also for material used in the building of said house. Gordon, in Palo Pinto county, is 25 or 30 miles from Stephenville, the county seat of Erath county, where the conveyance in question was registered. Travel between the two towns was very limited. The facts recited in some measure show the strong equity reflected by this record in favor of the appellees upon the question of the effect upon their rights by the prompt registration by Quarles of the conveyance in question, but perhaps they have no bearing upon the legal question involved, namely: Are Hardin and Conway precluded from setting aside the fraudulent conveyance of Quarles by the fact that their debts were created subsequent to its registration? The pertinent provisions of the statutes are as follows:

Article 6828, R. S., provides that:

"Every conveyance, covenant, agreement, deed, deed of trust or mortgage in this chapter mentioned, or certified copies of any such original conveyance, covenant, agreement, deed, deed of trust or mortgage copied from the deed or mortgage records of any county in the state where the same has been regularly recorded, although the land mentioned may not have been situated in the county where such instrument was recorded, and which shall have been acknowledged, proved or certified according to law, may be recorded in the county where the land lies; and when delivered to the clerk of the proper court to be recorded shall take effect and be valid as to all subsequent purchasers for a valuable consideration without notice, and as to all creditors from the time when such instrument shall have been so acknowledged, proved or certified and delivered to such clerk to be recorded, and from that time only: Provided, however, that all certified copies filed and recorded under the provisions of this article shall take effect and be in force from the time such certified copy was filed for record; and provided, further, that nothing in this shall be construed to make valid any instrument which was at the time of its execution from any cause invalid."

Article 6842, R. S., provides that:

"The record of any grant, deed or instrument of writing authorized or required to be recorded, which shall have been duly proven up or acknowledged for record and duly recorded in the proper county, shall be taken and held as notice to all persons of the existence of such grant, deed, or instrument."

The question presented has never been directly passed upon by the courts of this state, so far as we have been able to ascertain. Appellants contend that the record of John Quarles' deed to his wife was constructive notice to all of its existence, and since the debts of appellees were created with such notice they cannot set the deed aside. The cases most strongly supporting this contention are Lewis v. Simon, 72 Tex. 470, 10 S. W. 554; Martin v. Jourdanton Mercantile Co., 185 S. W. 583; Monday v. Vance, 51 S. W. 346; De Garca v. Galvan, 55 Tex. 53. In Lewis v. Simon, Solomon Simon made a voluntary conveyance of his property to his wife. Lewis claimed title thereto under attachment proceedings levied thereon upon a debt contracted above five months after the accrual of the rights of the wife. Her deed was recorded on .the day of its date. Judge Gaines in that case discusses what is now 3967, R. S. 1911, as it relates to the rights of existing and subsequent creditors to set aside a voluntary conveyance and makes no specific reference to the registration statutes then in force. It was held that there was no evidence to warrant a judgment for Lewis. The rule announced in Wait on Fraudulent Conveyances that "as a general rule a subsequent creditor who acquired his claim with knowledge or notice of the conveyance sought to be annulled cannot attack it as fraudulent," is quoted with approval, but we think the decision in that case rested upon the conclusion that the evidence as a whole failed to disclose such fraud in the execution of the conveyance as would authorize subsequent creditors to set it aside. We do not think it was intended to base the decision upon the proposition alone that the debt was created subsequent to the registration of the deed. Rather, that what was said in this connection was in passing upon the issue of fraud vel non sufficient to authorize a subsequent creditor to set the deed aside. A radical distinction between Lewis v. Simon and the cases at bar lies in the fact that there the evidence considered as a whole failed to disclose the existence of such fraud upon subsequent creditors in the execution of the deed as would authorize them to attack it, whereas here the jury has found that such fraud did exist upon John Quarles' part when he

made the conveyance to his wife, and this finding we approve. Lewis v. Simon may be further distinguished in this important particular, viz.: What is now article 6828 of the chapter relating to registration, at that time read:

"Every conveyance, covenant, agreement, deed, deed of trust or mortgage in this chapter mentioned, which shall be acknowledged, proved or certified according to law, and delivered to the clerk of the proper court to be recorded, shall take effect and be valid as to all subsequent purchasers for a valuable consideration, without notice, and as to all creditors, from the time when such instrument shall be so acknowledged, proved or certified, and delivered to such clerk to be recorded, and from that time only." Article 4334, R. S. 1879.

In 1895 that article was amended and appears in R. S. 1911 as article 6828, and is quoted in full above. The last proviso in the amended article expressly provides that nothing in the same shall be construed to make valid any instrument which was at the time of its execution from any cause invalid. Under the jury's finding, the deed from John Quarles was invalid as to the creditors whom he proposed to defraud, and by virtue of the proviso indicated, its registration did not validate same. If it was invalid as to them, its registration did not affect such subsequent creditors with constructive notice thereof. Stiles v. Japhet, 84 Tex. 91, 19 S. W. 450. In Martin v. Jourdanton Mercantile Co., supra, neither the pleadings nor the evidence showed that the conveyance was made to shield the property from future debts, and anything that may have been said as to the effect upon the rights of subsequent creditors by the registration of the deed prior to the creation of such debts was not necessary to a decision. In Monday v. Vance, supra, the parties were subsequent purchasers with record notice of the prior deed, and the right of a creditor was not before the court. Furthermore, the rights of the parties in that case, as affected by the law of constructive notice, were governed by article 4334, R. S. 1879. In Cole v. Terrell, 71 Tex. 549, 9 S. W. 668, the right of a subsequent creditor to set aside a conveyance made with intent to defraud him is affirmed and the true basis of the decision in De Garca v. Galvan, supra, is thus pointed out:

"The cases, 55 Tex. 53, De Garca v. Galvan, and 65 Tex. 658, Willis & Bro. v. Smith, where the general proposition is given that subsequent creditors cannot complain, seem to have been cases where the conveyances were attacked without producing evidence of intent to defraud the complaining creditors."

As is indicated above, the decision in Lewis v. Simon is subject to the distinction thus pointed out in Cole v. Terrell.

Passing now from the cases which seem most strongly to support the contention of appellants, we find in Dosche v. Nette, supra, that the court recognized the right of a creditor to set aside a voluntary conveyance executed with the view of shielding the grantor's property from future debts. The deed in that case was executed and recorded prior to the accrual of the rights of the attacking creditor. It may be noted, too, that this case was decided prior to the amendment of article 4334, R. S. 1879. The court did not discuss the effect of the registration of the deed upon the rights of the creditor, but held as follows:

"Our opinion is that the court should have instructed the jury, as requested, that if the conveyance was made with a view to protect the property of the donor from future debts and with intent to defraud such creditors, it would be void."

In Sikes v. Bank, 197 S. W. 227, it was held that subsequent creditors could not be heard to say that they had no notice of a deed alleged to have been executed to defraud them because the deed was of record. But it was held that the evidence was insufficient to show that the deed was executed in fraud of the rights of the creditors. It being a valid deed, not vitiated by fraud, the provisions of article 6828, R. S., with reference to notice, were of course applicable. A study of the opinion in that case will disclose that it seems to recognize the right of a subsequent creditor to set aside a conveyance upon the ground of fraud existing at the date of its execution; that such right is not affected by any constructive notice afforded by the record of the deed, the registration of the deed not operating to give notice by virtue of the proviso to article 6828.

We therefore hold that in view of the fraudulent purpose with which John Quarles executed the deed to his wife, existing at the date of its execution, the same was invalid as to subsequent creditors, and their rights were not impaired by the fact that the deed was immediately registered in the county where the land lay.

[6-9] As to those assignments relating to the good faith of Mrs. Quarles, it is sufficient to say that the intent of the grantee is immaterial in a voluntary conveyance fraudulent as to the grantor's creditors. 20 Cyc. 469. The consideration for the deed was executory, and if it had been shown that Mrs. Quarles had complied with her agreement to provide a home for her husband and pay him the sum of $33.33 per month she might be considered a purchaser for value, in which case her intent would be material. But her own testimony shows that she did not provide the home in which he is residing. It shows that this home was built out of material purchased by John Quarles from Hardin and Conway, for the payment of which John Quarles became personally liable, and appellees have recovered a personal judgment against him therefor and are now seeking to enforce it. She also testified that it was John's business to pay for the house, and that she expected him to do so out of the crops. By her testimony she shows that she did not comply with one of the conditions up-

on which the deed was executed, and therefore cannot be considered a purchaser for value. But if she be considered a purchaser for value the evidence is sufficient to justify the inference that she was a party to the fraud which her husband has attempted to perpetrate, or at least, that the facts were sufficient to put her upon notice so as to deprive her of the rights of a bona fide purchaser. Wright v. Linn, 16 Tex. 34. If Mrs. Quarles desired these issues submitted to the jury, request therefor should have been made in writing. In the absence of such request the issues will be presumed to have been resolved against her by the trial court in such manner as to support the judgment. Article 1985, R. S. No such request was made in the Conway Case. In the Hardin Case special issues 2 and 3 requested by the Quarleses bear upon the issue of Mrs. Quarles' participation in the fraud, but were not in proper form, and the trial court was authorized to refuse same. There was no request in the Hardin Case at all for the submission of the issue of notice to Mrs. Quarles at the time of the execution of the deed of John Quarles' fraudulent purpose in executing the same. It follows, therefore, in this condition of the record, that it must be assumed that the issues of participation by Mrs. Quarles in the fraud and notice of her husband's fraudulent purpose were both found against her by the trial court.

Various assignments complain of the overruling of exceptions to the issues submitted. They present no reversible error. Possibly some of the exceptions should have been sustained, but if so, overruling same was harmless error.

In both of these cases temporary injunctions were issued enjoining the sale of the property. Upon final hearing the judgment in the Hardin Case dissolved the temporary injunction; the conveyance to Mrs. Quarles was canceled and held for naught, and a personal judgment rendered against Mrs. Quarles for $850 as the value of the materials furnished; also against John and L. A. Quarles and the sureties upon the injunction bond for $72.33, being 10 per cent. damages. It is admitted by Hardin that the sum of $850 is excessive, and that it should have been rendered for only $723.35. In the Conway Case judgment was entered as follows: First, dissolving the temporary injunction; second, against John and L. A. Quarles and the sureties upon the injunction bond in the sum of $781.10; third:

"In accordance with the verdict of the jury in response to special issue No. 2, the court finds that in the event that said deed or instrument in writing dated January 25, 1915, from John Quarles to Lula Quarles is a valid deed, then that the separate property of the said L. A. Quarles has been enhanced in value by the stuff purchased from said J. W. Conway and placed on said separate property to the amount of $264.10, and the court is therefore of the opinion that the said J. W. Conway should have

judgment against the said L. A. Quarles for said sum and interest, even though said deed should finally be held to be valid. It is therefore ordered, adjudged, and decreed by the court that in the event said deed be held to be valid, nevertheless, the said J. W. Conway shall have and recover of and from the said L. A. Quarles the sum of $264.10, together with 6 per cent. interest thereon from January 1, 1916, for which let execution issue, and the execution provided for in subdivision 3 of this judgment shall be levied on the lands and chattels of the said L. A. Quarles."

[10] There is nothing in the record evidencing that the suit was for delay, and there was no authority to assess a penalty of 10 per cent. in the Hardin Case. These were not suits to enjoin the collection of money, the collection of a debt, or the execution of a money judgment, but simply to enjoin the sale of certain property which it was claimed by Mrs. Quarles was not subject to sale to satisfy the judgments theretofore rendered against John Quarles. The judgments will be reformed in proper manner, and as thus reformed will be affirmed.

Judgment in the Hardin Case will be entered as follows: (1) Dissolving the temporary injunction. (2) That plaintiffs take nothing by their suit. (3) That the conveyance in question is void as to Hardin, and that the property conveyed thereby (except the homestead) is subject to sale in satisfaction of the judgment theretofore rendered wherein Hardin obtained judgment against John Quarles for his debt with foreclosure of his attachment lien. (4) Taxing costs against the plaintiffs. A similar judgment will be entered in the Conway Case. These judgments will permit the sheriff to proceed with the execution of the process in his hands, issued upon the judgments originally rendered against John Quarles, and adequately and fully protects the rights of Hardin and Conway and of purchasers of the property at the sheriff's sale. The conveyance in question is valid as between the parties thereto. The costs of appeal will be taxed against appellants.

Reformed and affirmed.