ten contract and order for the goods signed by him."

[3] In view of what we have already said, we think this case must be reversed and remanded anyway. It is entirely likely, therefore, that counsel for Ellerd will have every opportunity to amend his pleadings hereafter as he pleases before another announcement of ready for trial. Therefore we do not think it necessary to answer the first certified question propounded. We pretermit any answer as to whether or not the trial judge abused his discretion, under all the circumstances before him, in refusing to stop this trial and permit practically a new case to be pleaded. To say the least of it, the general theory of our law is that parties must finish pleading their cases before announcing ready for trial. The latter part of article 1824 of Vernon's Sayles' Civil Statutes of Texas of 1914 reads as follows: '

"All amendments to pleadings, pleas and pleas of intervention, must, when court is in session, be filed under leave of the court, upon such terms as the court may prescribe, before the parties announce ready for trial, and not thereafter."

CURETON, C. J. The opinion of the Commission of Appeals answering certified questions adopted, and ordered certified to the Court of Civil Appeals.

---

## QUARLES et al. v. HARDIN.   (No. 359–3157.)

(Commission of Appeals of Texas, Section B. March 28, 1923.)

**I. Fraudulent conveyances ☞210—Recorded voluntary conveyance 'to wife is good against subsequent creditors.**

Under Rev. St. 1911, arts. 3966, 3967, defining fraudulent conveyances, and article 6842, making the record of a deed notice to all persons of its existence, a voluntary conveyance by a husband to his wife, made at a time when he owed no debts and recorded at that time, is good as against creditors of the husband who sold materials to him several months after the deed was recorded.

**2. Fraudulent conveyances ☞210—"Constructive notice" renders actual knowledge of deed immaterial.**

The "constructive notice" of the existence of a recorded deed under Rev. St. art. 6842, is a conclusive presumption of law that all persons have actual notice of the existence of the deed, so that it is immaterial that one who sold goods to a husband on credit after the husband. had 'voluntarily conveyed his property to his wife and placed the deed of record had no actual knowledge of the existence of the deed.

[Ed. Note.—For other definitions, see' Words' and Phrases, First and Second Series, Constructive Notice.

**3. Fraudulent conveyances ⊜➝210—Fraudulent intent never carried out does not invalidate deed.**

Even though a husband may have intended to defraud subsequent creditors by conveying his property to his wife, he frustrated that intention by placing the conveyance of record so as to give such creditors notice thereof, and the mere fraudulent intention not carried into effect does not invalidate the deed so as to bring it within the proviso of Rev. St. art. 6828, that nothing in the article shall be construed to make valid an instrument which was at the time of its execution invalid.

**4. Appeal and error ⊜➝362(1)—Fundamental error not mentioned in application for writ of error cannot be considered.**

The Supreme Court is without authority to reverse a judgment of the Court of Civil Appeals for an error not referred to in the application for writ of error, even though the error is fundamental, and therefore cannot reverse a personal judgment for defendant for the value of materials used in improvements on plaintiff's land, where the only errors relied on in the application for the writ of error related to the portions of the judgment declaring the conveyance to plaintiff to be fraudulent and denying an injunction against the sale of the land for the grantor's debts.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by L. A. Quarles and others against H. H. Hardin for injunction. Judgment for defendant was modified by reducing the amount and affirmed by the Court of Civil Appeals (197 S. W. 1112), and plaintiffs bring error. Judgment reversed and rendered in so far as it denied injunction and held a conveyance void, and affirmed in so far as it authorized recovery by defendant.

R. L. Thompson and J. A. Johnson, both of Stephenville, for plaintiffs in error.

Chandler & Pannill, of Stephenville, and W. P. Gibbs, of Gordon, for defendant in error.

HAMILTON, J. On January 25, 1915, John Quarles, for and in consideration of the love and affection that he had for his wife, L. A. Quarles, and the further consideration that she pay him $33⅓ per month during his natural life and that she give him a home during his lifetime, executed and delivered to her a deed granting, selling, and conveying to her, during her lifetime, all of his real estate, aggregating more than 1,000 acres, and conveying to her absolutely all his right, title, and interest in and to all his live stock, farming implements, and one vendor's lien note with accrued interest and providing for distribution of the remainder, at his wife's death, among his children. This deed was filed for record in the office of the county clerk of Erath county, where the land was situated, on the day of its execution. John Quarles owned no other property. He owed nobody anything at the date of the deed.

In February, 1915, Quarles told Hardin's agent who was in charge of Hardin's Lumber yard in Gordon, Palo Pinto county, six or eight miles from Quarles' home, that "he would want a right smart bill of lumber and wanted it on fall time." Browder, the agent, told Quarles that Mr. Hardin had instructed him not to sell on fall time. Quarles replied that it would not do him any good unless he could get it that way. Mr. Hardin was in Gordon at some time in the following June, and Browder told him that Quarles wanted "a nice bill of lumber on fall time." Hardin told Browder to let Quarles have it. Browder then wrote Quarles a note telling him that Mr. Hardin "was willing to carry him till fall" and that he would sell him a bill of lumber and he could pay for it the first of November. Quarles got from Hardin lumber and other building material amounting to $723.36. Quarles made no representations to Hardin that he still owned any property and used no artifice or deception to lead Hardin to believe that he had not executed the transfer. All of the material was used in building a residence and other improvements on the land conveyed by the deed above referred to. A short time before November 1, 1915, Browder "heard that this transfer had been made." Quarles failed to pay the account on November 1st, and his wife refused to sign a note with him extending time of payment. Hardin filed suit, and levied an attachment on part of the land conveyed by the deed above mentioned. Judgment and foreclosure of attachment lien was had by Hardin. An order of sale was issued upon the judgment and placed in the sheriff's hands for execution. L. A. Quarles, joined by her husband, filed suit to enjoin the sale. The district court granted a temporary injunction. Upon final hearing, that court dissolved the temporary injunction, canceled and held for nought the deed conveying the property to Mrs. Quarles, rendered a personal judgment against Mrs. Quarles for $850 as the value of the material furnished by Hardin, and against John and L. A. Quarles, and the sureties on the injunction bond for $72.32, 10 per cent. damages on the $723.36 account. Mrs. Quarles and her husband appealed, and the Court of Civil Appeals reformed the trial court's judgment by reducing the personal judgment against L. A. Quarles from $850 to $723.35 and denying recovery of the $72.33 damages above noted, and entered judgment dissolving the temporary injunction; that John and L. A. Quarles take nothing by their suit; that the conveyance of land to L. A. Quarles was void as to Hardin; and that the property convey-

ed thereby, the homestead excepted, was subject to sale in satisfaction of the judgment theretofore obtained by Hardin against John Quarles for his debt with foreclosure of his attachment lien, and taxing costs against the two Quarles, 197 S. W. 1112.

Article 3960 of the Revised Civil Statutes 1911 is as follows:

"Every gift, conveyance, assignment, or transfer of, or charge upon, any estate, real or personal, every suit commenced, or decree, judgment or execution suffered or obtained, and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers, or other persons of or from what they are, or may be, lawfully entitled to, shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. This article shall not affect the title of a purchaser, for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

Article 3967 of the same statutes follows:

"Every gift, conveyance, assignment, transfer or charge made by a debtor, which is not upon consideration deemed valuable in law, shall be void as to prior creditors, unless it appears that such debtor was then possessed of property within this state subject to execution sufficient to pay his existing debts; but such gift, conveyance, assignment, transfer or charge shall not on that account merely be void as to subsequent creditors, and though it be decreed to be void as to a prior creditor, because voluntary, it shall not for that cause be decreed to be void as to subsequent creditors or purchasers."

Article 6828 provides that—

"Every conveyance, covenant, agreement, deed, deed of trust or mortgage in this chapter mentioned, or certified copies of any such original conveyance, covenant, agreement, deed, deed of trust or mortgage copied from the deed or mortgage records of any county in the state where the same has been regularly recorded, although the land mentioned may not have been situated in the county where such instrument was recorded, and which shall have been acknowledged, proved or certified according to law, may be recorded in the county where the land lies; and when delivered to the clerk of the proper court to be recorded shall take effect and be valid as to all subsequent purchasers for a valuable consideration without notice, and as to all creditors from the time when such instrument shall have been so acknowledged, proved or certified and delivered to such clerk to be recorded, and from that time only; provided, however, that all certified copies filed and recorded under the provisions of this article shall take effect and be in force from the time such certified copy was filed for record; and provided, further, that nothing in this shall be construed to make valid any instrument which was at the time of its execution from any cause invalid."

Article 6842 reads as follows:

"The record of any grant, deed or instrument of writing authorized or required to be recorded, which shall have been duly proven up or acknowledged for record and duly recorded in the proper county, shall be taken and held as notice to all persons of the existence of such grant, deed or instrument."

In the case of Lewis v. Simon, 72 Tex. 470, 10 S. W. 554, Simon made a voluntary conveyance to his wife. The deed was filed for record on the day of its date. At the time of the conveyance he was indebted in an amount in excess of the value of his assets. After that time he engaged in speculative enterprises on an extensive scale for one of his means and within 10 months after executing the conveyance he failed owing a large amount. The land was sold under an execution upon a judgment rendered against Simon establishing a lien of attachment levied upon the land as the property of Simon, the sheriff executing the deed. The debt upon which the judgment was rendered was an open account contracted more than five months, but less than six, after the conveyance from Simon to his wife. Mrs. Simon joined by her husband brought suit to recover the land. Lewis defended upon the ground that the deed was made with intent to defraud the subsequent as well as existing creditors of Simon, and was therefore void as to the creditor who obtained the judgment on the account, under which the land was sold.

In disposing of that case our Supreme Court, through Judge Gaines, said:

"Conceding therefore that the deed from Simon to his wife was a voluntary conveyance and that it was void as to existing creditors, this does not render it void as to subsequent creditors. The only facts remaining from which fraud in the conveyance as to the latter class of creditors could be deduced are that soon thereafter Simon began operating upon a larger scale and shortly became insolvent.

"The use of the word 'merely' in the statute quoted indicates that the Legislature contemplated that cases might arise in which a voluntary conveyance should be held void even as to subsequent creditors; but we are clearly of opinion that the facts here in evidence do not make such a case. If a grantor should voluntarily convey his property to his wife or children and should cause the deed to be withheld from the record, intending notwithstanding his conveyance to obtain credit upon faith of still being the owner of the property, and should he accordingly obtain such credit, a strong case would be presented for holding the conveyance fraudulent although it might be placed upon the record before the creditor secured a lien upon the property by judgment or otherwise.

"But such is not the case before us. Here the deed was recorded upon the day of its execution and notice was given to the world that the grantor had parted with his title to the property. It has been held that where a voluntary conveyance is made in contemplation of

the grantor's entering upon hazardous speculations and with a view to protect it from subsequent creditors in the event his ventures should result disastrously it is fraudulent as against such subsequent creditors. Wait's Fraud. Conv. §§ 100, 101, and cases cited.

"But the author cited also says: 'As a general rule a subsequent creditor who acquired his claim with knowledge or notice of the conveyance sought to be annulled can not attack it as fraudulent.' Id., § 106; Baker v. Gilman, 52 Barb. 39. This rule has been recognized in former decisions in this court. Lehmberg v. Biberstein, 51 Texas, 457; De Garca v. Galvan, 55 Texas, 53; Van Bibber v. Mathis, 52 Texas, 406. The creditor knowing that the grantor has voluntarily parted with his property, we fail to see the device or deceit by which he can claim to have been defrauded. We conclude there was no evidence to warrant a verdict for the defendant and that the court did not err in instructing the jury to find for the plaintiff."

[1, 2] Whatever may have been in the mind and heart of Quarles or his wife when the deed under consideration was executed, the act of filing it for record rendered impossible the perpetration of any fraud by virtue of it. By the terms of the statute, from the time when that instrument was delivered to the clerk to be recorded, all persons had constructive notice of its existence. Constructive notice has been defined as in its nature "no more than evidence of notice, the presumption of which is so violent that the court will not even allow of its being controverted." Sterry v. Arden, 1 Johns. Ch. (N. Y.) 261; Briscoe v. Bronaugh, 1 Tex. 326, 46 Am. Dec. 108. It is a "conclusive presumption, or presumption of law, which arises from certain facts proven to exist, as for instance, the proper and legal registration of a deed in the county where the land lies." Sickles v. White, 66 Tex. 179, 17 S. W. 543. "Constructive notice prescribed by statute includes not only the evidence of notice where the presumptions are violent, or the imputation of knowledge from presumptions too strong to be rebutted, that such knowledge has been communicated, or a legal inference of notice of a high character; but it also embraces that which is made conclusive upon the party notified by the provisions of the statute, without regard to the evidence of actual notice, or the actual probabilities of the communication of the knowledge imputed." Wade on the Law of Notice, § 39. Article 6842 requires that the record of the Quarles deed "shall be taken and held as notice to all persons" of its existence, and article 6828 declares that "from the time when such instrument shall have been * * * delivered to such clerk to be recorded," it "shall take effect and be valid as to all subsequent purchasers for a valuable consideration without notice, and as to all creditors." Since the record of the Quarles deed must "be taken and held as notice to

all persons of the existence of such deed," that record must be taken and held as notice to Mr. Hardin of the existence of that deed. Since it is made to "take effect and be valid * * * as to all creditors from the time when, or after, it was delivered to the clerk to be recorded," it was valid and in effect when Hardin sold John Quarles the building material for which the account sued on was incurred. This being true, Hardin had notice of a valid and effective transfer of the land to Mrs. Quarles from the day of its execution. He had had notice of the deed for about five months when he sold Quarles the material. The fact that he had no actual knowledge of the transfer until after the sale is immaterial. The record of the deed took the place of and was tantamount to actual knowledge of its existence, under the facts of this case. If Hardin did not have actual knowledge of its existence, he might have had such actual knowledge by the exercise of proper diligence. If a deed to land, executed at a time when the grantor owes no man anything, as the deed under consideration, and recorded on the day of its execution, may be set aside at the instance of a subsequent creditor, on the ground of fraud, then our registration laws fail of their purpose, and no grantee can ever feel secure in his title to any land purchased by him because that title may be jeopardized by attacks from the grantor's creditors to whom the grantor owed nothing at the time he executed the deed.

[3] It is urged by defendant in error that the last proviso in article 6828, "nothing in this shall be construed to make valid any instrument which was at the time of its execution from any cause invalid," is applicable to the Quarles deed. The contention seems to be that the Quarles deed was invalid from the instant of its execution and that the record thereof could not make it valid. If the premise in that proposition were correct, the conclusion drawn would be correct. The premise is incorrect because no invalidity in the deed at the date of its execution and before its filing for record is shown. Even if Quarles had the secret purpose of placing his property beyond the reach of those to whom he might in the future become indebted, that intention alone did not make the deed invalid, nor was it an act of fraud. The law does not deal with mere determinations of the will. Neither do mere determinations of the will affect anybody or have any results. It is only determinations of the will which produce an effect upon the world of sense, or outward acts, of which the law takes any cognizance. The making of the deed by Quarles did not produce the effect of fraud any more than the making of a deed by any other person produces fraud. "Fraud" is the intentional determination of the will of another to a decision harmful to

his interests by means of a representation which is neither true nor believed to be true by the person making it. If Quarles had the secret intention of allowing Hardin, or any other person, to believe that he still owned the land and to obtain credit on the ground of that belief and intending never to pay, the record of the deed frustrated that plan by informing the world that he did not own the land on the very date of the deed. Therefore those secret intentions were cut off from ever working themselves out into acts of which alone the law takes cognizance. The deed was not invalid at the date of its execution, but was valid, not only after its delivery to the clerk to be recorded, but also, as far as the record in this case shows, from the instant of its execution.

[4] We have referred to the personal judgment rendered by the trial court against Mrs. Quarles in the sum of $850 and to the reformation of that judgment and its reduction, by the Court of Civil Appeals, to the sum of $723.35. No reference is made in plaintiff in error's application for writ of error to the judgment of the Court of Civil Appeals against L. A. Quarles for $723.35, and, in the absence of any error assigned in regard to that judgment, the Supreme Court is without authority to reverse it, even though its rendition might have been fundamental error. In the case of Schaff v. Mason, 111 Tex. 388, 235 S. W. 520, our Supreme Court, through Justice Greenwood, says:

"This disposes of every question presented in the petition for writ of error. But, by oral and written argument, on submission of this cause, plaintiffs in error raise, and seek to have determined, whether the judgment is not fundamentally erroneous, under the state of the law, when Mason was injured, with respect to a receiver's liability for injuries resulting in death, caused by negligence of the receiver's servants. So well settled is the practice in this court, which denies a reversal to a plaintiff in error for errors not assigned in his petition, that new assignments are never considered, no matter what may be their nature, even when presented in an amended petition for writ of error, unless the amended petition is filed within thirty days from the date on which motion for rehearing is overruled in the Court of Civil Appeals, as required by article 1541 of the Revised Statutes."

We recommend that the judgments of the district court and the Court of Civil Appeals dissolving the temporary injunction, denying L. A. Quarles and her husband any recovery by this suit, holding the conveyance in question void as to Hardin, and that the property conveyed thereby is subject to sale in satisfaction of the judgment obtained by Hardin against John Quarles for debt, and foreclosing his attachment lien and taxing costs against Quarles and his wife, be reversed; and that judgment be rendered here forever restraining the sheriff from further proceedings under and by virtue of the order of sale issued directing the sale of the land and personal property conveyed to L. A. Quarles by the deed of John Quarles above referred to, and quieting title of L. A. Quarles in and to all of the property in said deed described in so far as the judgment rendered by the district court of Erath county against John Quarles in favor of Hardin for the debt for materials furnished is concerned.

We further recommend that the personal judgment of the trial court against L. A. Quarles, as that judgment was reformed and affirmed by the Court of Civil Appeals for the sum of $723.35, be affirmed.

We further recommend that all costs incurred in this cause in the district court, incident to the injunction suit, and all costs incurred in the Court of Civil Appeals and the Supreme Court, be taxed against Hardin, and that all costs of the trial court incident to the cross-action in which Hardin recovered the judgment against L. A. Quarles be taxed against her.

CURETON, C. J. The personal judgment rendered against L. A. Quarles by the District Court as reformed by the Court of Civil Appeals is affirmed; and the judgments of the Court of Civil Appeals and District Court are otherwise reversed and rendered as recommended by the Commission of Appeals.